JOURNAL ENTRY and OPINION
{¶ 1} A jury found appellant, Darcel Melvin ("appellant"), guilty of murder with a firearm specification for the shooting death of Shannon Dorsey (the "victim"). The evidence presented at trial showed that, in June 2003, appellant shot the victim two times in the back after the victim initiated a fistfight with appellant. On that day, the victim, accompanied by two of his friends, drove to an apartment building to shoot dice. When they arrived, appellant and the victim exchanged words about a female,[1] the victim punched the appellant, and the two began to wrestle. Appellant instructed "Mike," a friend, to "get the backup," which he did, returning from the apartment building with a gun. The gun was passed to appellant, the victim turned to run, and appellant shot the victim twice in the back. The victim turned toward appellant, wrestled the gun away from him, and fired the gun into the air. Appellant retrieved the gun from the victim, fled, and hid in an apartment nearby when the police arrived to investigate the crime scene. The victim was pronounced dead after being transported to the hospital.
 {¶ 2} After evading the police for approximately one month and hiding in an apartment of an elderly woman, appellant was arrested and charged with aggravated murder with a firearm specification. Appellant gave an oral statement to the police, admitting that he was involved in the fight with the victim but claiming that his friend, "Mike," actually shot the victim. After the jury found appellant guilty of murder with a firearm specification, the trial court sentenced him to a prison term of a total of 18 years to life. Appellant now appeals, citing five assignments of error for our review. For the following reasons, we affirm appellant's conviction.
 I. {¶ 3} Appellant contends, in his first assignment of error, that the trial court improperly denied his Batson challenge in violation of theFourteenth Amendment of the United States Constitution. He argues that the state's reasons for using their peremptory challenge on two black potential jurors were pretext for racial discrimination. Upon review of the record, however, appellant's argument is not well-taken.
 {¶ 4} The United States Supreme Court, in Batson v. Kentucky (1986),476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69, established a three-part test to determine whether a peremptory challenge is impermissibly based on race. First, the opponent of the peremptory challenge must show that the potential juror is a member of a "cognizable racial group." Batson,476 U.S. at 96. Once the opponent of the peremptory challenge makes a prima facie showing, "the burden shifts to the [proponent of the peremptory challenge] to come forward with a neutral explanation for challenging black jurors." Id. at 97. Finally, the trial court must decide based on all the circumstances, whether the opponent has proved purposeful racial discrimination. Id. at 98. Unless clearly erroneous, a trial court's findings of no discriminatory intent will not be reversed on appeal. State v. Bryan, 101 Ohio St.3d 272, 2004-Ohio-971, ¶ 106,804 N.E.2d 433.
 {¶ 5} Here, the record supports the trial court's finding of no discriminatory intent in excluding the two potential black jurors. First, the state explained that it exercised its challenge with respect to juror number 10 (a black man) because he had an attitude that the state believed favored the defense and he was perceived to be somewhat unstable in the community because he held temporary employment. Second, the state explained that it exercised another challenge with respect to juror number 9 (a black woman) because she became "teary-eyed" during the voir dire and the state perceived that she would be favorable to the defense. At the time of the state's challenge to juror number 9, there were four black potential jurors seated. In addition, the next replacement juror to take juror number 9's seat was black. Based on all the circumstances of the challenges and the total constitution of the jury, the trial court did not err in denying appellant's Batson
objections, as he failed to prove purposeful discrimination. Thus, appellant's first assignment of error is overruled.
 II. {¶ 6} For his second assignment of error, appellant argues that he was deprived a fair trial because of prosecutorial misconduct during the state's opening statement. Appellant asserts that the state improperly indicated that there was a history between appellant and the victim as appellant previously had pulled a gun on the victim's girlfriend. The trial court sustained appellant's objection, instructed the jury that statements made in opening are not considered evidence, and overruled appellant's motion for a mistrial.
 {¶ 7} Here, appellant argues that the state's comments of "bad blood" between the appellant and the victim was not supported by the evidence at trial. For example, the victim's girlfriend testified that she was not aware of any jealousy between appellant and the victim, nor had she witnessed any problems between the two men. The test for prosecutorial misconduct is whether remarks were improper and, if so, whether they prejudicially affected substantial rights of the accused. State v.Clemons, 82 Ohio St.3d 438, 451, 1998-Ohio-406, 696 N.E.2d 1009. The trial court gave a curative instruction to the jury to disregard any statements made in opening and sustained appellant's objection to the "bad blood" between appellant and the victim. We presume that the jury followed the trial court's instruction.
 {¶ 8} More importantly, however, is that even without the state's comment in opening statement, the fact remains that the victim was dating appellant's former girlfriend and mother to his child. Even if the victim's girlfriend was unaware of any problems between the two men, most would agree that some tension between the two men is inevitable. In light of all of the evidence against appellant, it cannot be said that appellant was so prejudiced by the state's comment in the opening statement. Thus, appellant's second assignment of error is overruled.
 III. {¶ 9} Appellant contends, in his third assignment of error, that trial counsel was ineffective for failing to object to the police officer's "interpretation" of appellant's oral statement and for failing to request an evidentiary hearing when appellant claimed at his sentencing that he was not allowed to testify or call his witnesses. However, appellant's contention lacks merit.
 {¶ 10} In order to prove ineffective assistance of counsel to warrant a reversal of conviction, the defendant must show, first, that counsel's performance was deficient and, second, that the deficient performance prejudiced the defense so as to deprive the defendant of a fair trial.Strickland v. Washington (1984), 466 U.S. 668, 104 S.Ct. 2052,80 L.Ed.2d 674, paragraph two of the syllabus. Even if appellant demonstrated that his counsel's performance was deficient, the deficiency here would not result in appellant's acquittal.
 {¶ 11} First, the police officer's "interpretation" of appellant's oral statement that his friend "Mike" shot the victim at appellant's instruction was not improperly admitted into evidence. As testified by the police officer, appellant was Mirandized prior to giving his oral statement. The police officer transcribed the statement into a written statement, but appellant refused to sign it. As testified by the police officer during cross-examination, the unsigned, typewritten statement was not a verbatim account of what happened; instead, it was more of an "interpretation" or summary. Regardless of how the oral statement was termed by the police officer, it was not objectionable as hearsay because it was an admission pursuant to Evid.R. 801(D)(2). Thus, appellant's trial counsel's failure to object to the police officer's "interpretation" of appellant's oral statement was not deficient.
 {¶ 12} Second, appellant's counsel's failure to request an evidentiary hearing did not constitute deficient performance where appellant was not prevented from taking the witness stand. The trial court thoroughly advised appellant before trial of his rights, including his right to testify or not testify. Appellant stated that he understood his rights. Moreover, at sentencing, appellant stated that he understood that he could have testified at his trial, but did not want to "blurt out" his desire to testify in front of the jury. Without more, there is nothing before this court that suggests that appellant's counsel's performance was deficient. Because appellant cannot demonstrate the first part of theStrickland test, his third assignment of error is overruled.
 IV. {¶ 13} Appellant argues, in his fourth assignment of error, that the trial court's instruction to the jury concerning the lesser included offense of manslaughter was confusing and violated the due process clause of the Fourteenth Amendment. Specifically, appellant asserts that the trial court's use of the term "all of you" instead of the term "unanimous" was erroneous in its instruction on voluntary manslaughter should the jury be unable to reach a verdict on murder. However, there is no due process violation nor any confusion because the term "all of you" is synonymous with "unanimous." Thus, appellant's fourth assignment of error is overruled.
 V. {¶ 14} Finally, appellant argues in his fifth (and supplemental) assignment of error, that his conviction should be reversed because he was arraigned without counsel's presence. However, appellant's argument is without merit.
 {¶ 15} The Supreme Court of Ohio held in State v. Bonnell (1991),61 Ohio St.3d 179, 182, 573 N.E.2d 1082, that appellant must demonstrate that he was prejudiced by the absence of counsel at the arraignment. See, also, State v. Allen (1997), 121 Ohio App.3d 666, 669,700 N.E.2d 682; cf. Bell v. Cone (2002), 535 U.S. 685, 695-696,122 S.Ct. 1843, 152 L.Ed.2d 914 (stating in dicta only that a trial is "presumptively unfair" where the accused is denied the presence of counsel at "a critical stage" such as arraignment). Here, the trial court used the arraignment proceeding for the purpose of finding appellant indigent so that he could have counsel appointed on his behalf. To now argue that he was denied counsel at his arraignment, where he pled not guilty and lost no crucial rights, would make the trial court's finding of indigence (and the benefit of appointed counsel) void. Because appellant cannot demonstrate that he was prejudiced in any way by the absence of counsel at his arraignment, his argument must fail. Thus, appellant's fifth assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Celebrezze, Jr., P.J., and Kilbane, J., concur.
[1] It is not entirely clear from the record over which female appellant and the victim exchanged words. For instance, the state suggested that there was "bad blood" between the appellant and the victim over Octavia Harris, the victim's girlfriend at the time of his death and the mother of appellant's daughter. In addition, there was testimony that the words were exchanged over a woman named Adrian, who was appellant's girlfriend at the time of the murder and who the victim was accused of contacting. This fact, however, is not essential to the appeal.